FRENCH & COMPANY (BANKERS), IN LIQUIDATION UNDER FRANK C. BRAMWELL, SUPERINTENDENT OF BANKS OF THE STATE OF OREGON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15061. Promulgated February 13, 1928.

*Leslie J. Aker, Esq.,* for the petitioner.

*C. H. Curl, Esq.,* and *A. H. Murray, Esq.,* for the respondent.

*Camden R. McAtee, Esq.,* as *amicus curiae.*

PHILLIPS : This proceeding was heard on the Commissioner's motion to dismiss the petition herein for lack of jurisdiction in the

Board to hear and determine the proceeding and on petitioner's motion for judgment by default and on the pleadings. The latter motion was based upon Commissioner's failure to file an answer.

It is alleged in the petition that the Superintendent of Banks of the State of Oregon took charge of the assets and affairs of French & Co., an insolvent banking corporation, on or about February 23, 1922; that he filed claims for refund for the years 1918 and 1919 on or about December 15, 1924; and that the Commissioner disallowed and rejected these claims for refund by letter dated April 15, 1926. The petitioner asks us to review this action. The Board has no jurisdiction over a proceeding arising solely from the rejection of a claim for a refund to a taxpayer of a tax paid. *Appeal of Everett Knitting Works*, 1 B. T. A. 5. See also section 274, subdivisions (a) and (g), Revenue Act of 1926. An order will be entered dismissing the petition so far as it relates to those years.

It further appears that a jeopardy assessment of $283.26 for 1920 taxes was made under the provisions of section 274(d) of the Revenue Act of 1924 and that the Commissioner notified petitioner of such assessment on January 26, 1926. The petitioner seeks to make such notice the basis of an appeal to this Board. The Board is without jurisdiction to hear and determine an appeal from a jeopardy assessment made under section 274(d) of the Revenue Act of 1924, prior to the filing and rejection of a claim for abatement. *Appeal of Oakdale Coal Co.*, 1 B. T. A. 773; *Appeal of National Tank & Export Co.*, 3 B. T. A. 1217.

The Commissioner made a further jeopardy assessment of a deficiency tax of $2,077.89 for the taxable year 1920. It appears that on or about February 27, 1926, the Commissioner notified petitioner by letter that an assessment of such amount had been made under the provisions of section 274(d) of the Revenue Act of 1924. It appears further that the statement in this letter that such assessment was made under the Revenue Act of 1924, was erroneous and that at its date no assessment had been made. A jeopardy assessment of $2,077.89 for 1920 was made in March, 1926, at which time the Revenue Act of 1926 was in effect and notice of such assessment was given petitioner by letter dated March 29, 1926. This Act differed from the Revenue Act of 1924 in that it gave to the Board jurisdiction to redetermine the proper amount of a jeopardy assessment without the necessity of filing a claim for abatement. See sections 279 and 274, Revenue Act of 1926. While it seems clear that we have no jurisdiction under the letter of February 27, 1926, jurisdiction to redetermine the deficiency for 1920 is properly based on the subsequent notice of the assessment made under the Revenue Act of 1926 unless, as respondent claims, such assessment falls within the provisions of section 282(a) of the Revenue Act of 1926 which provides:

Sec. 282. (a) Upon the adjudication of bankruptcy of any taxpayer in any bankruptcy proceeding or the appointment of a receiver for any taxpayer in any receivership proceeding before any court of the United States or of any State or Territory or of the District of Columbia, any deficiency (together with all interest, additional amounts, or additions to the tax provided for by law) determined by the Commissioner in respect of a tax imposed by this title upon such taxpayer shall, despite the provisions of subdivision (a) of section 274, be immediately assessed if such deficiency has not theretofore been assessed in accordance with law. Claim for the deficiency and such interest, additional amounts and additions to the tax may be presented, for adjudication in accordance with law, to the court before which the bankruptcy or receivership proceeding is pending, despite the pendency of proceedings for the redetermination of the deficiency in pursuance of a petition to the Board; but no petition for any such redetermination shall be filed with the Board after the adjudication of bankruptcy or the appointment of the receiver.

In *Clifton City Bank* v. *Commissioner*, 6 B. T. A. 643, a similar question arose where the assets of the petitioner had been taken over by the Bank Commissioner of the State of Missouri. There we reached the conclusion that such Bank Commissioner was a statutory receiver under the law. Counsel for petitioner freely admits that the Superintendent of Banks of the State of Oregon is a statutory receiver, but denies that there is "any receivership proceeding before any Court." He contends, and it seems to us correctly so, that the section quoted above applies only when there is a receiver in a receivership proceeding before any court.

The statute does not require that the receiver shall be appointed by the court. It does specify that there shall be a receiver in a receivership proceeding before a court. In those instances where statutes provide that certain officials shall take over the duties of a receiver or liquidating agent, and at the same time grant to a court the authority to supervise and control such receiver, so that the property may be said to be in the custody of the court and the receiver may be said to be its officer, the mere fact that the court does not appoint the receiver seems unimportant. In such a case there has been a receiver appointed in a receivership proceeding before a court. Such a case differs from the ordinary case of receivership only in the manner of the appointment of the receiver.

There is, however, another class of statutory receivers who take over property pursuant to the statute without thereby initiating a receivership proceeding in any court. The property taken over is in their custody, not the custody of any court. Unlike a receiver in a proceeding where the property is in the custody of the court, they may sue or be sued in any jurisdiction. They represent the person whose property has been taken over; not any court having its custody. Such a receivership was before the Supreme Court in *Relfe* v. *Rundle*, 103 U. S. 222. In that case Relfe, the Superintendent of

Insurance of the State of Missouri, had taken over the assets of the Life Association of America, pursuant to statutory authority. A suit was brought in Louisiana by Rundle, a policyholder, to keep the Louisiana assets of the association out of the hands of Relfe. In such suit a receiver was appointed by the court. Relfe was thereafter made a party on his own motion and filed a petition for removal of the cause to a Federal court, on the ground of diversity of citizenship. The Federal court refused to take jurisdiction. Its decision was reversed, the Supreme Court saying:

We think the Circuit Court erred in remanding the cause. The entire controversy is between the appellees, representing the Louisiana creditors and policy-holders on one side and Relfe, the statutory representative of the corporation and its property, on the other, as to their respective rights to what the appellees claim are Louisiana assets belonging primarily to Louisiana creditors. * * *. After the decree of dissolution the Life Association Company had no longer any corporate existence, and * * * the property of the corporation was transferred to Relfe and he became under the law entitled to the possession.

Relfe is not an officer of the Missouri State court, but the person designated by law to take the property of any dissolved life insurance corporation of that State, and hold and dispose of it in trust for the use and benefit of creditors, and other parties interested. The law which clothed him with this trust was, in legal effect, part of the charter of the corporation. He was the statutory successor of the corporation for the purpose of winding up its affairs. As such he represents the corporation at all times and places in all matters connected with his trust. He is the trustee of an express trust, with all the rights which properly belong to such a position. He is an officer of the State and as such represents the State in its sovereignty while performing its public duties connected with the winding up of the affairs of one of its insolvent and dissolved corporations. His authority does not come from the decree of the court, but from the statute. He appeared in Louisiana not by virtue of any appointment from the court, but as the statutory successor of a corporation which the court had in a legitimate way dissolved and put out of existence. He was, in fact the corporation itself for all the purposes of winding up its affairs.

We are aware that, except by virtue of some statutory authority, an administrator appointed in one State cannot generally sue in another, and that a receiver appointed by a State court has no extra-territorial power; but a corporation is the creature of legislation, and may be endowed with such powers as its creator sees fit to give. Necessarily it must act through agents, and the State which creates it may say who those agents shall be. * * *

. By the charter of this corporation, if a dissolution was decreed, its property passed by operation of law to the superintendent of the insurance department of the State, and he was charged with the duty of winding up its affairs. Every policy holder and creditor in Louisiana is charged with notice of this charter right which all interested in the affairs of the corporation can insist shall be regarded. The appellees, when they contracted with the Missouri corporation, impliedly agreed that if the corporation was dissolved under the Missouri laws, the superintendent of the insurance department of the State should represent the company in all suits instituted by them affecting the winding up of its affairs. Relfe, therefore, became, by operation of law, the successor of the corporation in the litigation these appellees instituted in

Louisiana. He was in legal effect, their only opponent in the suit they had begun, and as he appeared in time and was a citizen of Missouri, representing a Missouri corporation, he was entitled to remove the cause and require citizens of Louisiana to litigate their claims with him in the courts of the United States.

The Supreme Court has long since decided that a national bank receiver is not an officer of a court although he may have to secure leave of some court before performing certain acts. *In re Chetwood*, 165 U. S. 443. In that case the question arose whether such a receiver could be sued in a State court, inasmuch as he had filed an application in a Federal court for leave to sell property of the bank. The court held that he could, and that a Federal court could not enjoin such a suit. In discussing the status of such a receiver the court said:

The receiver was not the officer of any court but the agent and officer of the United States, as ruled by Mr. Justice Gray, on circuit, in *Price* v. *Abbott*, 17 Fed. Rep. 506, and by Mr. Justice Jackson, then Circuit Judge, in *Armstrong* v. *Trautman*, 36 Fed. Rep. 275. And see *Porter* v. *Sabin*, 149 U. S. 473, 479; *Platt* v. *Beach*, 2 Ben. 303; *Frelinghuysen* v. *Baldwin*, 12 Fed. Rep. 395; *Armstrong* v. *Ettlesohn*, 36 Fed. Rep. 209.

  *  *  *  *  *  *  *

The receiver acts under the control of the Comptroller of the Currency and the moneys collected by him are paid over to the Comptroller, who disburses them to the creditors of the insolvent bank. Under section 5234 of the Revised Statutes, when the receiver deems it desirable to sell or compound bad or doubtful debts, or to sell the real and personal property of the bank, it devolves upon him to procure " the order of a court of record of competent jurisdiction," but the funds arising therefrom are disbursed by the Comptroller, as in the instance of other collections.

The Circuit Court did not have the assets or property of this bank in its possession on July 19, 1890, nor was the leave of that court necessary in order that the receiver might be made a party defendant to the action instituted by Chetwood on that day.

In the bill filed by Stateler in the Circuit Court, January 4, 1896, to enjoin Chetwood and the bank, the averment is made that on February 21, 1889, the receiver filed an application in the Circuit Court entitled " *In re* application of receiver of the California National Bank for the sale of personal property," and the bill asserts as a conclusion of law that thereby " the said receiver submitted himself and the affairs of said banking association to the jurisdiction of this honorable court." The application thus referred to is not made part of the return to the rule, but from the averments of the bill in regard to it, and from the terms of the national banking law itself, we think it plain that no such result followed its presentation. Our attention has been called to no case in which it has been held that the filing of such petitions by national bank receivers in the Federal courts operates to make the receiver an officer of the court or to place the assets of the bank within the control of the court in the sense in which control is acquired where a receiver is appointed by the court.

As we have said, Chetwood's right to bring the suit in the state court against the officers of the bank must be held as not open to dispute on this record, and the bank was properly made a party.

In *Bernheimer* v. *Converse*, 206 U. S. 516, the court said:

It is objected that the receiver cannot bring this action and *Booth* v. *Clark*, 17 How. 322; *Hale* v. *Allinson*, 188 U. S. 56, and *Great Western Mining Co.* v. *Harris*, 198 U. S. 561, are cited and relied upon. But in each and all of these cases it was held that a chancery receiver, having no other authority than that which would arise from his appointment as such, could not maintain an action in another jurisdiction. In this case the statute confers the right upon the receiver, as a quasi assignee, and representative of the creditors, and as such vested with the authority to maintain an action. In such case we think the receiver may sue in a foreign jurisdiction. *Relfe* v. *Rundle*, 103 U. S. 222, 226; *Howarth* v. *Lombard*, 175 Massachusetts, 570; *Howarth* v. *Angle*, 162 N. Y. 179, 182.

The banking laws of Oregon provide that the superintendent of banks shall take immediate possession and control of a bank in certain circumstances enumerated in the statute; that upon taking possession he must inventory its assets and file duplicates in his office and in the office of the clerk of the county in which such bank was located; that he shall collect money due such bank and do such other acts as are necessary to preserve its assets and business and shall proceed to liquidate its affairs; that he shall cause notice to be given by advertisement to all persons having claims against such bank to present same to him; that he may reject such claims and serve notice of such rejection upon the claimants; that he shall make in duplicate a full and complete list of the claims presented, indicating which have been rejected, one of which lists shall be filed in his office and one in the office of the county clerk; and that he may declare and pay dividends.

In the case of any claim rejected by the superintendent, an action may be brought thereon. There is no limitation in the act as to the court or jurisdiction in which such action must be brought. If the superintendent fails to reject a claim, any party interested may file objections thereto with the superintendent who is required to present such objections to the circuit court of the judicial district in which the office of such bank was located, which court is directed to hear and determine such objections. The superintendent may not sell or compound any bad or doubtful debts or any of the real estate or personal property of the bank without first securing an order from the circuit court of such judicial district. He may not pay dividends without first securing an order from such court. The expenses of liquidation are to be fixed by the superintendent, subject to the approval of such court. In case of doubtful or conflicting claims he may apply to such circuit court for an order authorizing and directing the payment.

Such provisions as these are the ordinary provisions governing statutory receivers. While the receiver may, and in some instances

must, resort to the court for advice or for its consent, each proceeding to secure such advice or consent is a separate and distinct proceeding. Until steps are taken to initiate such a proceeding no court has any jurisdiction. The situation is no different from that in *In re Chetwood, supra,* where a Federal receiver was required to secure permission from the court before selling or compounding bad or doubtful debts or selling real or personal property of the bank.

Section 282 appears to have been designed to avoid a multiplicity of proceedings. Where a receivership proceeding is pending in a court, that court should determine claims against the property in its custody but where, as here, the property is not in the custody of the court and the receiver may sue or be sued in any jurisdiction, there seems to be no reason why he is not entitled to avail himself of the procedure provided by Congress for a determination of tax liability by this Board. The issue must be determined at some time by some body of competent jurisdiction. There is no one body with exclusive jurisdiction over the receiver or the property, and in our opinion the receivership here involved does not fall within either the letter or intendment of section 282.

The motion of the Commissioner to dismiss the proceeding, so far as it relates to the year 1920 is denied.

The petitioner moves for judgment for the relief requested in the petition upon the ground of the respondent's failure to answer the petition within the time allowed by the rules of the Board and for judgment on the pleadings herein. It appears that before the time for an answer had expired the Commissioner moved to dismiss this proceeding for want of jurisdiction in the Board to hear and determine the same. No answer has been filed. The motion to dismiss was undoubtedly made in good faith. It is the opinion of the Board that in such circumstances no answer is required until such motion shall first have been determined. Petitioner further takes exception to such motion on the ground that it was not filed within twenty days as provided by the rules of the Board. A plea to the jurisdiction of a body of limited jurisdiction, such as is the Board, may be raised at any time. Jurisdiction can not be granted by the parties nor can it be acquired by a failure to plead the lack thereof. Such a motion is timely made at any stage of the proceedings and having here been made in good faith prior to the date when an answer was due, it will be disposed of before any answer will be required. An order will be entered accordingly in which the respondent will be granted twenty days from the date of service of a copy thereof upon his counsel in which to file any motion with respect to the petition herein or in which to file an answer thereto.

Reviewed by the Board.